IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


NANETTE A.,[1]                           3:19-cv-00509-BR

          Plaintiff,                     OPINION AND ORDER

v.

Commissioner, Social
Security Administration,

          Defendant.

**KAREN STOLZBERG**
P.O. Box 19699
Portland, OR 97280
(503) 251-0707

          Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

     [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**L. JAMALA EDWARDS**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3749

       Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Nanette A. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on November 5, 2015, alleging a disability onset date of April 15, 2015.  Tr. 170-78.[1] The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on November 30,

---

[1] Citations to the official transcript of record filed by the Commissioner on August 30, 2019, are referred to as "Tr."

2017.  Tr. 38-69.  Plaintiff was represented at the hearing. Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on March 23, 2018, in which she found Plaintiff was disabled as of September 23, 2017.  The ALJ, however, also found Plaintiff was not disabled between her April 15, 2015, alleged onset date and September 22, 2017, and, therefore, she is not entitled to benefits for the period of April 15, 2015, through September 22, 2017.  Tr. 14-30.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on February 15, 2019, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on September 24, 1962, and was 55 years old at the time of the hearing.  Tr. 172.  Plaintiff has a GED. Tr. 43.  Plaintiff has past relevant work experience as a school-bus driver, hairdresser, data-entry clerk, and shipping clerk. Tr. 28.

Plaintiff alleges disability during the relevant period due to severe depression, post-traumatic stress disorder (PTSD), "back and neck issues," sciatica, diabetes, and neuropathy. Tr. 70.

Except when noted Plaintiff does not challenge the ALJ's

summary of the medical evidence.  After carefully reviewing the

medical records, this Court adopts the ALJ's summary of the

medical evidence.  *See* Tr. 20-25.


## STANDARDS

The initial burden of proof rests on the claimant to

establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th

Cir. 2012).  To meet this burden, a claimant must demonstrate her

inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental

impairment which . . . has lasted or can be expected to last for

a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  The ALJ must develop the record when there is

ambiguous evidence or when the record is inadequate to allow for

proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d

881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d

453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision

if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole.  42

U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*,

682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is

"relevant evidence that a reasonable mind might accept as

adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11

(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially

dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a

week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in

substantial gainful activity from her April 15, 2015, alleged
onset date through September 23, 2017, the date on which she
became disabled.  Tr. 16.

At Step Two the ALJ found during the relevant period
Plaintiff had the severe impairments of spine disorder, chronic
pain, left-shoulder impairment, fibromyalgia, diabetes, obesity,
borderline IQ, anxiety, PTSD, and depression.  Tr. 16.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments during the relevant period did not meet
or medically equal one of the listed impairments in 20 C.F.R.
part 404, subpart P, appendix 1.  Tr. 17.  The ALJ found during
the relevant period that Plaintiff had the RFC to perform light
work with the following limitations:  Plaintiff could stand
and/or walk for four hours in an eight-hour workday; could
occasionally climb stairs and ramps, balance, stoop, kneel,
crouch, and crawl; could frequently finger and handle; could
never climb ladders, ropes, or scaffolds or have exposure to
hazards; could have occasional contact with supervisors and
"superficial contact with coworkers with no teamwork"; could have
"brief superficial contact with the public"; and was "limited to
simple, routine work in a workplace with no more than occasional
workplace changes."  Tr. 19.

At Step Four the ALJ found Plaintiff could not perform her
past relevant work during the relevant period.  Tr. 28.

At Step Five the ALJ found Plaintiff could perform other work that existed in the national economy during the relevant period.  Tr. 29.  Accordingly, the ALJ concluded Plaintiff was not disabled from April 15, 2015, through September 22, 2017.

## **DISCUSSION**

Plaintiff contends the ALJ erred when she (1) failed to address at Step Two Plaintiff's somatic symptom disorder; (2) partially rejected Plaintiff's testimony; (3) gave "limited weight" to the Third-Party Function Report of lay-witness Anette McBroom, Plaintiff's friend; (4) partially rejected the opinions of Felicia Foster, Psy.D., and Joni Moon, Psy.D., treating psychologists, and Scott Alvord, Psy.D., examining psychologist; and (5) failed at Step Three to include all of Plaintiff's limitations in her assessment of Plaintiff's RFC.

**I.    The ALJ did not err at Step Two.**

As noted, Plaintiff contends the ALJ erred at Step Two when she failed to address Plaintiff's somatic symptom disorder.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.  A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R.

§ 404.1521(a).  *See also Ukolov v. Barnhart*, 420 F.3d 1000, 1003
(9th Cir. 2005).  The ability to do basic work activities is
defined as "the abilities and aptitudes necessary to do most
jobs." 20 C.F.R. §§ 404.1521(a), (b).  Plaintiff has the burden
at Step Two to establish the existence of a severe impairment and
to show any error by the ALJ is harmful.

Courts have held Step Two is "merely a threshold
determination meant to screen out weak claims."  *Bowen v.
Yuckert*, 482 U.S. 137, 146-47 (1987).  *See also Buck v.
Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017)(same).  Step Two
"is not meant to identify the impairments that should be taken
into account when determining the RFC.  In fact, '[i]n assessing
RFC, the adjudicator must consider limitations and restrictions
imposed by all of an individual's impairments, even those that
are not severe.'"  *Buck*, 869 F.3d at 1048-49 (quoting SSR 96-8p,
1996 WL 374184, at *5 (S.S.A. July 2, 1996)).

The Ninth Circuit has held when the ALJ has resolved Step
Two in a claimant's favor, any error in designating specific
impairments as severe at Step Two does not prejudice a claimant
if the ALJ considered the impairments when formulating his
assessment of Plaintiff's RFC.  *See, e.g., Vivian v. Saul*, 780 F.
App'x 526, 527 (9th Cir. 2019)("Any error at step two in failing
to list Vivian's hand, knee, and hip impairments and spinal
osteoarthritis was harmless because the ALJ resolved step two in

Vivian's favor and considered all of his symptoms in formulating the residual function capacity."); *Buck,* 869 F.3d at 1049 ("[S]tep two was decided in [the plaintiff's] favor after both hearings. He could not possibly have been prejudiced. Any alleged error is therefore harmless and cannot be the basis for a remand.")(citation omitted).

Here the ALJ resolved Step Two in Plaintiff's favor and considered Plaintiff's mental-health limitations in her evaluation of Plaintiff's RFC, and, therefore, any error by the ALJ at Step Two is harmless. Moreover, the ALJ noted at Step Two that Plaintiff

> has exhibited a constellation of symptoms that have resulted in varying diagnosis for her mental health conditions depending on her presentation during different examinations. For instance, some medical providers diagnosed intermittent explosive disorder, gambling disorder, rule out cyclothymic disorder, rule out learning disorder and somatic symptom disorder instead of, or in addition to, the severe mental impairments listed above (Exhibits 9F, 13F, and 15F). As discussed thoroughly below, the undersigned has considered all mental health symptoms regardless of diagnosis.

Tr. 16-17. The ALJ, therefore, considered Plaintiff's various mental-health conditions at Step Two. In any event, Plaintiff does not indicate how her somatic symptom disorder "significantly limits" her "physical or mental ability to do basic work activities."

Accordingly, on this record the Court concludes the ALJ did

not err at Step Two when she did not specifically find Plaintiff's somatic symptom disorder was severe during the relevant period.  In any event, the Court concludes any error by the ALJ in failing to identify specifically Plaintiff's somatic symptom disorder as severe was harmless because the ALJ resolved Step Two in Plaintiff's favor.

## II.  The ALJ erred when she partially rejected Plaintiff's testimony.

As noted, Plaintiff contends the ALJ erred when she partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is

not credible are insufficient.  *Id*.  The ALJ must identify "what
testimony is not credible and what evidence undermines the
claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the hearing that she has pain in her
left shoulder, her neck, her legs, and her back.  Plaintiff
stated she gets sharp pain in her neck that goes down to her rib
cage when she turns her head to the left.  When Plaintiff lifts
her left arm above shoulder height, she stated she gets "sharp
piercing pains."  Tr. 49.  Plaintiff noted she also has pain and
numbness in her hands.  Plaintiff stated she has daily sciatic
pain from the top of her back down to her left calf, and, as a
result, she can walk only ten or fifteen feet without triggering
pain.  When Plaintiff has sciatic pain, she takes medication and
sits in her recliner or lies down in bed with her left leg
elevated.  Plaintiff also testified she has severe depression,
which sometimes causes her not to shower or to dress for four or
five days.  Plaintiff noted she has suffered from depression
since before her onset date.  In the year before her onset date
she missed "at least five or six days [of work] a month, every
month" due to pain and depression.  Tr. 59.  Plaintiff noted she
experiences irritability and anger and "go[es] off" approximately
"twice a day in [her] room by [her]self."  Tr. 59.  Plaintiff
stated she had been "written up" by management for "outbursts at
work" at the job she held before her onset date.  Tr. 60.

Plaintiff has also had "explosions" "five or six times" with the hotel manager at the hotel in which she is currently living. Tr. 60

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's testimony "concerning the intensity, persistence and limiting effects of [her] symptoms [is] not fully supported." Tr. 20. Specifically, the ALJ noted Plaintiff is living in a motel room, which she gets in exchange for cleaning the nine-room motel. In August 2017 Plaintiff reported to Dr. Moon that she was "getting frustrated with her landlord/boss for taking advantage of her (she . . . has been working a lot more than the cost of the room without additional compensation and with the assistance of her partner)." Tr. 694. The ALJ also noted Plaintiff occasionally does front-desk duties when the motel owner is gone. Plaintiff, however, testified her boyfriend, who she lives with, cleans the motel and "maybe once" per week Plaintiff helps him "if [she's] up to it." Tr. 45. Plaintiff also explained when her landlord is away she is able to do front-desk duties from her room so she can sit and lie down as needed. Tr. 46. The record reflects Plaintiff did front-desk duties for two weeks in June 2017 when her landlord was away, and, as a result, she struggled with the "added responsibilities" and her pain levels increased. Tr. 704.

The ALJ also noted although Plaintiff complained of pain, numbness, and weakness, the record reflects numerous visits to various medical-health professionals when Plaintiff had normal gait, intact strength, normal neurological examinations, and normal range of motion. *See, e.g.,* Tr. 351, 357, 386, 620, 623-36, 641. A May 2015 x-ray of Plaintiff's cervical spine, however, showed "[m]arked degenerative disc disease with associated spondylosis and uncovertabral arthrosis" at C5-6-7, moderate generalized facet arthrosis, and "moderate/marked bilateral foraminal stenosis at C5-6-7 C6-7." Tr. 517. A May 2015 x-ray of Plaintiff's lumbar spine showed "severe degenerative disc disease with minor spondylosis [at] L2-3-4 and L5-S1" and "marked generalized facet arthrosis, most pronounced at L5-S1." Tr. 519. In addition, an October 2015 MRI of Plaintiff's lumbar spine reflected severe degenerative disc disease at L2/L3 and "a little bit lesser so at L3/L4"; moderate-to-severe bilateral facet disease at L2/L3, L3/L4, L4/L5; "moderate right greater than left facet disease" at L5/S1; moderate-to-severe left-side foraminal narrowing at L3/L4 and L5/S1; and moderate foraminal narrowing at L2/L3. Tr. 472.

The record also reflects visits with various medical professionals in which Plaintiff had decreased range of motion, tenderness, pain, spasms, and "worsening bilateral low back pain." *See, e.g.,* Tr. 629, 649. In addition, the record

reflects in May 2016 Plaintiff had "exhausted conservative management [for her back problems, but she was] most likely not a surgical candidate." Tr. 621.

The Court concludes on this record that the ALJ erred when she partially rejected Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms because the ALJ did not provide clear and convincing reasons supported by substantial evidence in the record for doing so.

### III. The ALJ erred when she gave limited weight to the Third-Party Function Report of Plaintiff's Friend, Anette McBroom.

Plaintiff alleges the ALJ erred when she gave some weight to the Third-Party Function Report of Plaintiff's friend, Anette McBroom.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

On December 15, 2015, McBroom completed a Third-Party

Function Report in which she stated Plaintiff suffers symptoms
and limitations similar to those set out by Plaintiff in her
testimony.  Specifically, she stated Plaintiff's pain keeps her
awake at night.  Plaintiff usually dresses herself, but when "her
pain and depression is really bad, she doesn't dress and just
stays in nightware."  Tr. 239.  Plaintiff can use the toilet but
has a lift on the toilet to get on and off of it.  Plaintiff can
heat frozen dinners, do light laundry, and drive.  Household
chores can take Plaintiff most of a day, and she often needs help
from friends due to her pain.  Plaintiff uses a scooter in stores
so she does not have to walk.  Plaintiff can lift five pounds,
cannot walk far, and can only pay attention for ten or fifteen
minutes due to her pain.

The ALJ gave limited weight to McBroom's statements.  As
noted, McBroom's report is substantially similar to Plaintiff's
testimony.  The Court has already concluded the ALJ erred when
she partially rejected Plaintiff's testimony because the ALJ
failed to provide clear and convincing reasons supported by
substantial evidence in the record for doing so.  Thus, the Court
concludes the ALJ erred on the same basis when she rejected
McBroom's statements.

**IV.  The ALJ did not err when she partially rejected the
opinions of Drs. Foster and Moon, treating psychologists,
and Dr. Alvord, examining psychologist.**

Plaintiff asserts the ALJ erred when she partially rejected

the opinions of Drs. Foster and Moon, treating psychologists, and Dr. Alvord, examining psychologist.

An ALJ may reject a treating or examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of a treating or examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

### A. Drs. Foster and Moon

In October 2017 Drs. Foster and Moon completed a Mental Impairment Questionnaire in which they diagnosed Plaintiff with a major depressive disorder and an intermittent explosive disorder. Drs. Foster and Moon noted it was "difficult to say what [Plaintiff's] prognosis will be but she has struggled with depression, irritability, and anger since" February 2016 when they began treating Plaintiff. Tr. 957. Nevertheless, they noted Plaintiff's mental impairments "lasted or can . . . be expected to last at least twelve months." Tr. 957. Drs. Foster and Moon noted Plaintiff had experienced an "[e]xacerbation of symptoms and signs, or a deterioration in functioning related to

an increase in demands upon [her]" as well as "episodes of deterioration which have resulted in absence from . . . work, or which have otherwise made it difficult for [her] to sustain age-appropriate activity over time." Tr. 959. Drs. Foster and Moon stated Plaintiff has a moderate inability to understand and to remember "very short and simple instructions"; to maintain regular attendance; to be punctual "within customary, usually strict tolerances"; to ask "simple questions or request assistance"; and to understand, to remember, or to apply information. Tr. 962-63. Plaintiff, however, has an "unlimited or very good" ability to "carry out very short and simple instructions." Tr. 962. Drs. Foster and Moon did not answer questions as to whether Plaintiff could be expected to perform a job for eight hours a day for five days a week on a sustained basis or how many, if any, days per month Plaintiff would be unable to complete or to attend work on the ground that those questions were beyond "the scope of treatment and lack of testing" by Drs. Foster and Moon. Tr. 963. Drs. Foster and Moon noted in their narratives that Plaintiff had reported she "has not had a normal workday nor workweek since" Drs. Foster and Moon began treating her in February 2016, that Plaintiff needs to take breaks and pace herself "with her work responsibilities due to her pain," and that Plaintiff "needs assistance from her partner [to] complet[e] [job] responsibilities and tasks due to her pain

level and moving slower." Tr. 964.

The ALJ gave "partial weight" to the opinion of

Drs. Foster and Moon

> because the moderate limitations they imposed are
> generally consistent with the clinic notes. Such
> limitations are supported by the objective mental
> status examination findings in which the sources
> consistently documented cooperative attitude,
> casual and appropriate dressing, normal speech,
> linear and goal-directed thought process, good
> attention, intact memory, depressed mood,
> constricted affect, and fair insight and judgment
> (Exhibits 9F and 13F). The mental improvement and
> stability the primary care physician documented at
> Exhibits 2F and 10F support the sources' opinion
> regarding the moderate limitations.

Tr. 25. The ALJ, however, gave "little weight" to "the rest of

the opinion" on the grounds that it is "a restatement of

[Plaintiff's] self-reported objective complaints," and, although

Drs. Foster and Moon noted in their narratives various reports by

Plaintiff of her inability to complete a full day of work, they

made clear that they were unable to offer a clinical opinion

about Plaintiff's abilities in those areas.

On this record the Court concludes the ALJ did not err

when she gave only partial weight to the opinions of Drs. Foster

and Moon because the ALJ provided clear and convincing reasons

for doing so based on substantial evidence in the record.

**B. Dr. Alvord**

On November 17, 2017, Dr. Alvord conducted a

psychological evaluation of Plaintiff in which he conducted an

interview; administered a mental-status examination, the Wechsler Abbreviated Scale of Intelligence Scale 2nd Edition, and the Wide Range Achievement Test 3rd Edition; and reviewed Plaintiff's medical records.  Dr. Alvord stated Plaintiff has "clearly . . . met the criteria for major depressive episodes over the years," has "likely met the criteria for PTSD since adolescence," and "is suffering from a major depressive episode now."  Tr. 969.  Dr. Alvord also saw "evidence of chronic anxiety."  Tr. 969.  Dr. Alvord diagnosed Plaintiff with major depressive disorder, rule-out cyclothymic disorder, PTSD, borderline IQ, rule-out learning disorder, and somatic symptom disorder.  Dr. Alvord also completed a Mental Impairment Questionnaire in which he stated Plaintiff had marked limitations in her ability to maintain attention for a two-hour segment; to maintain regular attendance and to be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being unduly distracted; to complete a normal workday and workweek without interruptions from psychologically-based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and to respond appropriately to criticism from supervisors; to deal with work stress; to interact with others; to concentrate, to persist, or to maintain pace; and to adapt or to manage herself.  Tr. 980-81.  Dr. Alvord

stated Plaintiff "could . . . be expected to perform a job, 8 hours per day, 5 days per week on a sustained basis" less than eighty percent of the time and would be absent four or more days per month.  Tr. 981.

The ALJ assigned "less weight" to Dr. Alvord's opinion on the ground that it is inconsistent with the overall record. Specifically, the ALJ noted Dr. Alvord's opinion was contradicted by the opinion of Drs. Foster and Moon who had treated Plaintiff for over 18 months and who, therefore, had a better opportunity to observe and to evaluate Plaintiff's limitations.  As noted, Drs. Foster and Moon stated Plaintiff was only moderately limited in her ability to understand and to remember "very short and simple instructions"; to maintain regular attendance; to be punctual "within customary, usually strict tolerances"; to ask "simple questions or request assistance"; and to understand, to remember, or to apply information.  Tr. 962-63.  Drs. Foster and Moon did not find Plaintiff had any marked limitations.

On this record the Court concludes the ALJ did not err when she gave "less weight" to Dr. Alvord's opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

## V.    The ALJ erred in her assessment of Plaintiff's RFC.

Plaintiff contends the ALJ erred at Step Three when she assessed Plaintiff's RFC.

As noted, a claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

As noted, the ALJ found Plaintiff could stand and/or walk for four hours in an eight-hour workday.  Plaintiff points out that 42 C.F.R. § 1567(b) provides jobs that are "in [the light-work] category when [they] require[] a good deal of walking or standing" and for a person to "be considered capable of performing a full or wide range of light work, [she] must have the ability to do substantially all of [the] activities [set out in 42 C.F.R. § 1567(b)]."  According to Plaintiff, a "good deal" of walking or standing is six-to-eight hours per day, and, therefore, Plaintiff is incapable of light work.  Plaintiff notes she was 53 on her alleged onset date, and, pursuant to Social Security Regulations, the ALJ would be required to find an individual of that age who could perform only sedentary work to

be disabled.  *See* 20 C.F.R. Part 404, Subpart P, App. 2,
§ 201.14.

The Dictionary of Occupational Titles (DOT) classifies
occupations into five physical-strength ratings:  sedentary,
light, medium, heavy, and very heavy work.  DOT, App. C.  The DOT
provides an occupation is sedentary when it "involves sitting
most of the time, but may involve walking or standing for brief
periods of time.  Jobs are sedentary if walking and standing are
required only occasionally and all other sedentary criteria are
met."  *Id*.  The DOT defines occasionally as "exist[ing] up to 1/3
of the time."  *Id*.  Accordingly, an individual who cannot stand
and/or walk for more than 2 hours and 40 minutes (*i.e.*, 1/3 of an
eight-hour workday) and who meets the other criteria for
sedentary work would be presumed to be limited to sedentary work.
The DOT provides a job should be rated as light work

> (1) when it requires walking or standing to a
> significant degree; or (2) when it requires
> sitting most of the time but entails pushing
> and/or pulling of arm or leg controls; and/or
> (3) when the job requires working at a production
> rate pace entailing the constant pushing and/or
> pulling of materials even though the weight of
> those materials is negligible.

*Id*.  Although the DOT does not provide a definition for
"significant degree," SSR 81-10 explains:

> The regulations define light work as lifting no
> more than 20 pounds at a time with frequent
> lifting or carrying of objects weighing up to 10
> pounds.  Even though the weight lifted in a
> particular light job may be very little, a job is

> in this category when it requires a good deal of
> walking or standing -- the primary difference
> between sedentary and most light jobs.
>
> * * *
>
> "Frequent" means occurring from one-third to
> two-thirds of the time.  Since frequent lifting or
> carrying requires being on one's feet up to
> two-thirds of a workday, *the full range of light
> work requires standing or walking, off and on, for
> a total of approximately 6 hours of an 8-hour
> workday*.  Sitting may occur intermittently during
> the remaining time.

SSR 83-10, 1983 WL 31251, at *6 (emphasis added).  Thus, an

individual who can stand and/or walk for six hours in an eight-

hour day and who meets the other criteria may perform light work.

As noted, however, Plaintiff is limited to standing and/or

walking four hours in an eight-hour work day, which is between

the two presumed categories of sedentary and light.  Although it

is clear that Plaintiff cannot perform the full range of light

work, Plaintiff has not established she is able to perform only

sedentary work.

The ALJ determined Plaintiff had an RFC of less than the

full range of light work and, therefore, posed a hypothetical to

the VE that included an individual capable of performing less

than the full range of light work.  The VE testified at the

hearing that he noted the ALJ's "hypothetical for light [work] is

a modification [of] normal light, so I adjusted my answers

accordingly, to fit within your hypothetical, which was the stand

and walk for four."  Tr. 65.  Plaintiff, therefore, has not

established the ALJ erred when she concluded Plaintiff could perform a reduced range of light work even though the ALJ limited Plaintiff to standing and/or walking only four hours in an eight-hour workday.

Plaintiff also asserts the ALJ's evaluation of Plaintiff's RFC was "inadequate" because the ALJ failed to include all of Plaintiff's limitations as set out in her testimony and the medical record. The Court has already concluded the ALJ improperly rejected Plaintiff's symptom testimony. Accordingly, the Court also concludes the ALJ erred in her assessment of Plaintiff's RFC when she failed to consider Plaintiff's limitations as set out in Plaintiff's testimony.


## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate

award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are necessary because in her evaluation of Plaintiff's RFC the ALJ failed to consider all of Plaintiff's limitations as set out in her testimony and in the Third-Party Statement of lay-witness Anette McBroom. Thus, the Court concludes a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ to evaluate Plaintiff's RFC in light of Plaintiff's fully considered testimony and Anette M's Statement.

## **CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 28 U.S.C. § 405(g) for further proceedings consistent with this

Opinion and Order.

        IT IS SO ORDERED.

        DATED this 31st day of March, 2020.


                                /s/ Anna J. Brown
        _____
                                ANNA J. BROWN
                                United States Senior District Judge